```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.                              Criminal Action No. 1:18CR54-1
                                          (Judge Kleeh)

**TERRY TRAPP**

        **Defendant.**

### MEMORANDUM OPINION AND ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE [ECF NOS. 210, 225]

Pending are the motions for compassionate release filed by the defendant, Terry Trapp ("Trapp"), pursuant to 18 U.S.C. § 3582(c)(1)(A) [ECF Nos. 210, 225]. For the reasons that follow, the Court **DENIES** his motions.

### I. BACKGROUND

On November 6, 2018, a grand jury named Trapp in five counts of an eight-count indictment, charging him with various controlled substance crimes [ECF No. 1].[1] After he pleaded guilty to conspiring to distribute controlled substances, the Court sentenced Trapp to 235 months of imprisonment [ECF Nos. 127, 181]. He is currently incarcerated at FCI Fort Dix and, with the

---

[1] Specifically, the grand jury charged Trapp with conspiracy to distribute controlled substances, aiding and abetting possession with intent to distribute methamphetamine, aiding and abetting possession with intent to distribute heroin, aiding and abetting possession with intent to distribute cocaine base, and unlawful possession of a firearm [ECF No. 1].

inclusion of good conduct credit, has a projected release date of August 26, 2034.[2]

On January 7, 2021, Trapp filed a pro se motion for compassionate release, contending that the combination of the environment at FCI Fort Dix during the COVID-19 pandemic and his preexisting medical conditions constitutes an extraordinary and compelling reason to modify his term of imprisonment [ECF No. 210]. He also contends that his family circumstances, his mitigating role in the offense, and the disparity between the sentence he received and the sentences his co-defendants received justify his release. Id. The Court appointed counsel the Federal Public Defender to assist Trapp. On April 9, 2021, his counsel filed a motion informing the Court that Trapp had stated a meritorious basis for release but adding no additional argument [ECF No. 225]. The Government did not file a response.

## II. APPLICABLE LAW

After imposing a term of imprisonment, a court may only modify its sentence in limited circumstances. See United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). One of these circumstances, compassionate release pursuant to 18 U.S.C. § 3582, permits courts to "reduce the term of imprisonment after making a 'three-step

---

[2] See Federal Bureau of Prisons, Inmate Locator https://www.bop.gov/inmateloc/ (results for register number 67646-066) (last visited March 31, 2023).

inquiry'": (1) has a defendant exhausted all administrative remedies; (2) does an extraordinary and compelling reason for a sentence reduction exist; and (3) is a sentence reduction consistent with all relevant sentencing factors listed in 18 U.S.C. § 3553(a)? See United States v. High, 997 F.3d 181, 185-86 (4th Cir. 2021).

### III. DISCUSSION

**A.   Administrative Exhaustion**

A defendant who moves for compassionate release must "exhaust his remedies with his warden and the BOP before filing his own motion for compassionate release." McCoy, 981 F.3d at 283. This non-jurisdictional requirement is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on [his] behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of [his] initial request to file a motion in the district court." United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021).

On October 5, 2020, Trapp submitted an administrative request for compassionate release, which the Warden at FCI Fort Dix denied on October 16, 2020 [ECF Nos. 210-2, 210-3]. Trapp therefore has

satisfied the administrative exhaustion requirement of § 3582(c)(1)(A).

**B.  Extraordinary and Compelling Reasons**

Title 18 U.S.C. Section 3582 does not define the term "extraordinary and compelling" but instead requires that any sentence reduction be consistent with the applicable policy statements of the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(ii); 28 U.S.C. § 944(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction"). In United States v. McCoy, however, the Fourth Circuit observed that "[t]here is as of now no applicable policy statement governing compassionate-release motions filed by defendants under the recently amended 18 U.S.C. § 3582(c)(1)(A)." 981 F.3d at 284 (internal quotation omitted). Thus, "district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise," but the policy statements "remain[] helpful guidance." Id. at 282 n.7 (emphasis in original).

Trapp asserts that several extraordinary and compelling reasons for his release exist, including his preexisting medical conditions, the environment at FCI Fort Dix in light of the COVID-19 pandemic, his family circumstances, his mitigating role in the

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [ECF NOS. 210, 225]**

offense, and the sentencing disparity between the co-defendants in this case. Upon careful review, the Court concludes that none of these reasons justify his release.

**1.    Preexisting Medical Conditions and Environment in the BOP**

"The mere existence of COVID-19 in a society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Significantly, this is so even if the facility where the inmate is incarcerated has experienced an outbreak of COVID-19. United States v. Williams, 2020 WL 5097490, at *3 (M.D.N.C. Aug. 28, 2020) (collecting cases). Nevertheless, an inmate's particularized susceptibility to COVID-19, and a particularized risk of contracting the virus at his prison facility, may constitute an extraordinary and compelling reason justifying compassionate release. United States v. Colleton, 2022 WL 18500, at *1 (4th Cir. Jan. 3, 2022) (citing United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020). In determining whether an inmate is particularly susceptible to COVID-19, courts rely on risk factors identified by the Centers for Disease Control and Prevention ("CDC") to assess whether he has medical conditions which place him at an increased risk of

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [ECF NOS. 210, 225]**

severe illness from the virus. Petway, 2022 WL 168577, at *3; United States v. Johnson, 858 Fed. App'x 682 (4th Cir. 2021).

Trapp asserts that his preexisting medical conditions of diabetes, hypertension, anxiety, and depression place him at an increased risk COVID-19 related illness. According to the CDC, hypertension "might" increase an individual's risk of severe COVID-19 related illness and diabetes "can make you more likely to get very sick from COVID-19."[3] The CDC has not identified anxiety or depression as COVID-19 risk factors.

Although Trapp's diabetes and hypertension are risk factors associated with COVID-19, his medical conditions are adequately monitored and managed by the BOP. A review of his medical records establishes that his preexisting medical conditions are well treated and not so severe as to amount to an extraordinary and compelling reason for his release [see ECF No. 210-10]. See United States v. Ayon-Nunez, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020) ("[C]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release."). The BOP has also assessed Trapp's mental health and has prescribed him mental health medication to treat his anxiety and depression. The Court

---

[3] CDC, People with Certain Medical Conditions (Feb. 10, 2023) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ people-with-medical-conditions.html#:~:text=Having%20heart%20conditions%20such%20as, American%20Heart%20Association%3A%20COVID%2D19 (last visited March , 2023).

therefore concludes that Trapp's medical conditions are not an extraordinary and compelling reason for his release.

**2.   The Environment at FCI Fort Dix**

Furthermore, extraordinary and compelling reasons do not exist for his release because he does not have a particularized risk of contracting COVID-19 at FCI Fort Dix.  As of April 17, 2023, there are zero active cases of COVID-19 at the facility.[4] Trapp's risk of exposure to COVID-19 in the BOP is accordingly negligible.

Trapp also contends that service of his sentence has been more onerous than intended because certain COVID-19 related restrictions have impacted his incarceration.  It is true that, in response to the COVID-19 pandemic, the BOP implemented infection prevention procedures to mitigate the risk and spread of the virus in its facilities, including some modifications to inmate programming and services.[5]  Currently, in response to COVID-19, the BOP categorizes FCI Fort Dix as a Level 1 facility,[6] which has necessitated some operational changes.  Id.  For example, inmates

---

[4] Federal Bureau of Prisons, COVID-19 Cases, bop.gov/coronavirus/ (last visited April 17, 2023).
[5] Federal Bureau of Prisons, COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp   (last visited March 31, 2023).
[6] BOP facilities "determine their operational level (Level 1, Level 2, or Level 3) based on the facilities' COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and their respective community transmission rates." Id.

must practice social distancing and wear facial coverings in some indoor areas and must self-report symptoms of COVID-19. Id. The Court notes, however, that FCI Fort Dix previously has been classified as a Level 2 and Level 3 facility, subjecting it to stricter modifications.

But the BOP's emergency operating procedures were informed by the guidance the BOP received from the Centers for Disease Control, the Occupational Safety and Health Administration, and the Department of Justice. Id. These efforts have lowered Trapp's risk of exposure to COVID-19 while incarcerated. Thus, the Court concludes that the BOP's informed efforts to curtail the spread of COVID-19 within its facilities and to protect its staff and inmates do not constitute an extraordinary or compelling reason to reduce Trapp's sentence.

3. **Family Circumstances**

Trapp next asserts that his family circumstances justify his release. Sadly, he reports that while he has been incarceration, his daughter was killed, leaving behind her three-year-old son. Trapp's wife currently cares for their grandson, but he wishes to be released so that he can serve as the child's primary caregiver.

As discussed above, courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." McCoy, 981 F.3d at 282 (emphasis in

original). Nevertheless, the applicable policy statements of the United States Sentencing Commission "remain helpful guidance." Id. at n.7. One such policy statement is U.S.S.G. § 1B1.13, Application Note 1(C), which provides that certain family circumstances constitute extraordinary and compelling reasons for a defendant's release. Pursuant to Application Note 1(C), a defendant may seek compassionate release based on family circumstances when the caregiver of their minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated, and the defendant is the only available caregiver. Id. at § 1B1.13, Application Note 1(C).

The Court is not persuaded that Trapp's family circumstances are so extraordinary as to justify his release. While Trapp understandably wishes to be with his grandson, the child is not without a suitable caregiver. See e.g., Taylor, 2022 WL 1510546, at *4 (denying release because defendant failed to establish that he was the only alternative caregiver for his children); Hooks, 2021 WL 796156, at *3 (denying release because other family members could be the caregiver for the defendant's terminally ill mother); United States v. Lottier, 2020 WL 7233363 at *2 (W.D. Va. Dec. 7, 2020) (collecting cases). Because Trapp's wife is a suitable caregiver for their grandson, his family circumstances do not justify his release.

**4.   Mitigating Role**

Trapp contends that he should have received a mitigating role adjustment at sentencing.  United States Sentencing Guideline § 3B1.2 provides for a reduction of the defendant's offense level if he had a mitigating role in the offense.  This guideline permits "a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, comment 3(C).  The determination of whether this guideline applies "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."  Id.

According to Trapp, his base offense level should have been adjusted under this guideline because he was on the periphery of the conspiracy.  At sentencing, Trapp's counsel did not object to the Court's calculation of his guideline range without any Chapter Three adjustment.  But he requested a variant sentence on several bases, including Trapp's role in the offense.  After considering the facts of the case, the Court found no reason to vary from Trapp's guideline range.  It reaches the same conclusion today.

Law enforcement officers located Trapp in a hotel room that contained several firearms and a variety of controlled substances packaged for individual sale.  None of the evidence of record

suggests that Trapp played a minor or minimal role in the conspiracy or that he was substantially less culpable than his co-defendants. Thus, Trapp's renewed request for a sentencing reduction based on his role in the offense is not an extraordinary and compelling reason for his release.

## 5.  Sentencing Disparity

Finally, Trapp asserts that, as the least culpable defendant, he received the most severe sentence. According to him, the disparity between the sentence he received and the sentences his co-defendants received justifies a reduction of his sentence. In Trapp's case, the Court imposed a low-end guideline sentence of 235 months of incarceration, based on his total offense level of 35 and his criminal history category IV [ECF No. 181]. The Court sentenced his co-defendants, Oscar Watkins ("Watkins") and Douglas Knicely ("Knicely") to 156 months of incarceration and 120 months of incarceration, respectively [ECF Nos. 152, 169].[7]

Although Trapp's co-defendants received lower sentences, his sentencing disparity argument is misplaced. In imposing a sentence, the Court must consider among other factors "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

---

[7] Both of these sentences fell within the defendants' applicable guideline range.

U.S.C. § 3553(a)(6). But § 3553(a)(6) is aimed at eliminating national sentencing disparities, not disparities between codefendants. See United States v. Withers, 100 F.3d 1142,1149 (4th Cir. 1996); United States v. Lattimore, 454 F. App'x 165, 167 (4th Cir. 2011). According to the United States Sentencing Commission, 47.8% of offenders with characteristics similar to Trapp's received a sentence above 120 months during the 2019 fiscal year.[8] Thus, the Court did not create an unwarranted disparity when it sentenced Trapp to 235 months of incarceration.

**C.   Sentencing Factors Pursuant to 18 U.S.C. § 3553(a)**

Even if Trapp could establish an extraordinary and compelling reason for his compassionate release, the Court must weigh and consider the § 3553(a) factors to determine whether a sentence reduction is appropriate in his case. High, 997 F.3d at 185-86. Any decision to reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) must be consistent with the relevant sentencing factors that require the Court to impose a sentence "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a). The relevant considerations

---

[8] This statistic relates to offenders who had a primary guideline of § 2D1.1, a criminal history category of IV, and a guideline range within Zone D of the sentencing table and whose crimes involved methamphetamine. See United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited April 3, 2023).

under § 3553(a) include the nature and circumstances of the offense, the defendant's history and characteristics, and whether the sentence imposed reflects the seriousness of the offense, promotes respect for the law, deters criminal conduct, and protects the public from future crime. Id. On balance, these factors weigh against reducing Trapp's sentence.

The nature and circumstances of the offenses weigh heavily against his release. On October 9, 2018, law enforcement officers interrupted a drug deal between Trapp's codefendants. The officers arrested Watkins and Knicely and found a hotel room key in Watkin's possession. They discovered that Trapp had rented the hotel room and, upon executing a search, found him therein. They also located approximately $2,000 cash, and four firearms, two loaded and one stolen. Two of these firearms were in a safe, the key to which was attached to Trapp's car keys. Additionally, the officers found a variety of controlled substances, including approximately 1200 grams of methamphetamine, approximately 26 grams of heroin, and approximately 36 grams of crack cocaine. Some of which were within Trapp's reach and packaged for individual sale. In his plea agreement, the parties agreed that Trapp's relevant conduct was between 500 grams and 1.5 kilograms of methamphetamine. This quantity of controlled substances and the inherent risk arising

from the combination of controlled substances and firearms weigh strongly against a reduction of his sentence.

Trapp's criminal history also weighs against any reduction. His history includes convictions for theft by unlawful taking, receiving stolen property, uttering, and possession with the intent to deliver controlled substances, as well as multiple convictions for theft by receiving stolen property and possession of a controlled substance. Although Trapp contends that at fifty-three-years-old his risk of recidivism has decreased, this argument overlooks the fact that he committed the offense conduct at the age of forty-eight (48). Thus, a risk of recidivism and a need to protect the public from future crime remains.

While Trapp has maintained a clear conduct record thus far during his incarceration, his recent effort does not outweigh the breadth and seriousness of his offense conduct and the harm inflicted. A term of imprisonment within the guideline range remains necessary to reflect the seriousness of his offense and provide just punishment. As Trapp has served only approximately only 52 months of his 235-month sentence, any reduction would result in a sentence insufficient to promote respect for the law, deter future criminal conduct, and provide adequate punishment for his offense.

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTIONS FOR COMPASSIONATE RELEASE [ECF NOS. 210, 225]**

### IV. CONCLUSION

After carefully considering all of Trapp's arguments, the Court concludes that no extraordinary and compelling reason exists to justify his release and a reduction of his sentence would be inconsistent with the § 3553(a) factors. It therefore **DENIES** his motions for compassionate release [ECF Nos. 210, 225].

It is so **ORDERED.**

The Clerk shall transmit copies of this Order to Trapp, via certified mail, return receipt requested, and to counsel of record and all appropriate agencies by electronic means.

DATED: April 17, 2023

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA